Case number 19-1003, United States of America v. Tramain Hill. Oral argument not to exceed 15 minutes per side. Sean Tilton for the appellant. You may proceed. Good morning, Your Honors. May it please the Court, I am Sean Tilton. I am Tramain Hill's attorney and may reserve four minutes for rebuttal, please. Your Honors, Mr. Hill pleaded guilty in the District Court to interference with commerce by robbery. And when the District Court sentenced Mr. Hill, it applied sentencing guidelines section 2B3.1, and specifically the specific offense characteristic for abduction under B4. We don't have any factual objections to what happened, but we do believe the District Court erred in applying the law and erred in applying the standards. What we're asking this Court to consider is adopting a standard similar to the one in the Seventh Circuit or the Eleventh Circuit, which looks at the physical restraint and abduction specific offense characteristic in that subsection as a whole. We don't have a published decision from the Sixth Circuit on this issue. I know we've got decisions from other circuits, and there are different approaches that the circuits have taken. Correct, Your Honor. There's nothing specifically about abduction. There are some published opinions regarding physical restraint. Can you maybe talk a little bit about the government's position seems to be relying heavily just on the dictionary definition of location as having a particularity requirement that the specific spot in which you are located. And so when Hill moved the individuals from the shopping area to the break room, like under a strict technical reading of location, each portion, each place within the Sprint store or whatever the store was, was a different location under the dictionary definition of a different place. So how would you respond to that, just the strict dictionary reading? Well, Your Honor, I think that the standard that we're advocating for, and as well in the Seventh and Eleventh Circuits, as well as case law in the Second Circuit as well, looks at the definition of, and I'm going to start with physical restraint, but says that inherent in physical restraint, there is going to be some movement of the victims. And I think in that definition, it looks at the purpose of the movement. Because I think if you have this definition where you look strictly at location or position, there's almost always going to be some kind of movement. And the common movement, I mean, this guideline is probably, I think, at least most commonly used in cases of bank robbery. And so sort of the common movement there is to the vault. And the purpose of moving those victims to the vault isn't to abduct them and to take them with the robbers. It's to put them in a place where they can secure them and then leave. And really that's what happened here. And I think if you adopt this standard that's in the – Once we depart from that definition, though, there's a line drawing problem that's kind of vague, right? I mean, how do you know – when does a location actually become a different location if we say that it's not a specific spot at which you are at one point in time and then accompany them to a different spot? So I think – and again, I think the Eleventh Circuit, when they looked at this in the Watley case, they said – they give the definition that one location is essentially a building, so it would be in the bank. So if the vault's in the same building, well, that's not an abduction at all. You're saying that that's a good illustration, but the vault's in the same building with a bank ordinarily, right? Correct. But if they put them in the vault and locked the door, that's not this abduction at all then? No, that would be the restraint. So that would be the argument is they have – I'm just saying the restraint, but that's not an abduction. Correct. And it would be the two-level enhancement versus the four-level enhancement. So why isn't the vault a different location? I mean, this is just a level of generality problem, right? I mean, if you say different location within the bank, clearly the vault is a different location within the bank than the teller area, right? We can see that. Yes, yes. So how do we – there's no prepositional phrase that codifies – or that modifies different location. How do we determine without that prepositional phrase when two different places should actually consider different locations within the meaning of the guideline? Well, I think there's one – I guess one area within the commentary to physical restraint. It defines physical restraint as essentially tying – or it gives a non-exhaustive list of examples as tying someone up, bounding them, binding them, or locking them up. And I think in that respect it's saying most likely you're going to be moving someone to lock them up, whereas the commentary defines abduction as just the example that it gives is forcing the bank teller from the bank. And so – Although the commentary just says from the bank to the getaway car. That's not all that far, right? You presume the getaway car will be right outside the bank. Right, hopefully. Maybe it could be even the same amount of difference between the teller to the getaway car as between the teller and the vault, in fact. Right, and so again I think that goes then to the purpose. If you're taking someone out of the bank or if you're taking someone out of the building, you are probably using them as part of your escape. And there then you're probably going to be increasing the likelihood of harm because you're removing them from that location. Whereas here you're putting the victim in a place and then the plan is to leave them. And so that's where I do think the Eleventh Circuit gives some flexibility there because it defines location within a building, but then it also says we're going to look at it case by case. How would you define – like there's some tricky hypotheticals like with a shopping mall. Like just assume a traditional – I know they're going out of existence now, but a shopping mall with a lot of different – inside a shopping mall a lot of different stores. If you took somebody from one store to another store, would you concede that that was a different location or would you say it's not a different location because it's still within the same mall? I think there you are getting much closer to where it's going to be a different location. Much as you're leaving – Why? Well, you're leaving the retail setting. Just for the same reason that if you're leaving the bank, even if the bank is in a mall, under the guidelines, I think, and under the Eleventh Circuit, I think that would most likely qualify for the abduction enhancement. Again, back to that purpose, you're taking the victims out to facilitate your escape and it increases the likelihood of harm, I think. Well, shouldn't it be up to the district court to decide whether this movement facilitates the commission of the crime as the guidelines give us? Well, I think that by adopting some sort of standard here, you're going to get some more consistency. I mean, I think my concern with the Tenth Circuit's standard is that the definition of location is too broad, and so you're essentially going to read out physical restraint from the guidelines. And so I think some constraints or some borders, I guess, on where or what purpose they would be taking someone for would be important. Is there a middle ground, perhaps, where the movement is substantial, some sort of substantiality requirement? So instead of having a situation where just a change in position or slight movement might be the movement to a different location, you could have some requirement that it be a substantial move. So like a building this size, let's say, somebody was moved from one space here in this area all the way on the other side of the building on a lower floor. I mean, it's not outside the building, but it's certainly a substantial move that may facilitate escape by the abductors. And I think that would be a very helpful test. Substantial movement, I think, would say a lot about why someone is being moved. I think that you would find support with the Seventh Circuit's definition. They use sort of more of a flexible test, somewhat similar to the Eleventh, but I think you would find support there where they are looking at the purpose. In the Eubanks case that we cited, they went back to, I think, the Fourth Circuit's case in Osborne, and in the Seventh Circuit they said that movement within the same building was not abduction. But they were looking at the purpose of why the victims were being moved. And so I think you could have that substantial movement test and look at why. Why does the purpose of why they're being moved matter under the text? Abductive means that a victim was forced to accompany an offender to a different location. There's no additional language to promote the getaway of a crime or anything to that effect. It just says means that a victim was forced to accompany an offender to a different location. What, of course, is the purpose of this abduction enhancement? I can't think of a decision that's directly addressed the purpose on point. I think it's been more implied in some of the decisions specifically about physical restraint. Perhaps causing more harm to the potential offender? I mean, the increase in likelihood. Wouldn't that be weird because then it would suggest if you take them to a location, from an isolated location to a new location that is very crowded, it would suggest that maybe there's less of a chance of harm. But that would seem to be an obvious case of applying the abduction enhancement because it was clearly a different location. I think any time you're moving someone, there's significantly from an original building outside the building, there might be an increased likelihood of harm. I think the typical robbery scenario, there's going to be some movement, and that's why there's this specific enhancement, the restraint enhancement is there, and I think a number of the cases recognize there's probably going to be some movement. I realize my time is up. Okay. Thank you. You'll have your rebuttal time. Good morning, Your Honors. May it please the Court. My name is Davin Roost. I'm an assistant United States attorney from Grand Rapids, Michigan, and I'm here today on behalf of the United States in the Hill case. In applying the abduction enhancement to the facts underlying Mr. Hill's case, the district court's decision comported with a policy underlying the abduction enhancement itself, the plain text of the abduction enhancement itself, and this court's prior decisions addressing both the abduction enhancement and the physical restraint enhancement. Can we start with the text? If somebody moved an individual from the appellee side of the bench to the appellant side of the bench, would you say that that's a different location subject to the abduction enhancement? Under the plain language of the guideline and the terms that are used in it, Your Honor, I would say that it is. And the reason why I would say that, or the reason why I think it matters here, is because of the twin policy rationales underlying the guideline. In the Cabo case, this court spoke about the fact that there was an increased risk of harm that underlied the justification. The five-foot movement there increases the enhancement from a two-level enhancement to a four-level enhancement. Yes, Your Honor. I believe that, again, under the plain language of the guideline, and that that plain language was adopted by the sentencing commission to catch the increased risk of harm that would occur there. Often, if an abduction, even of that short distance. What about from one seat to the next seat, just within the two seats? Is that a different location, too? Again, Your Honor, I mean, you're just reading out a physical restraint. The physical restraint means the forcible restraint of the victim, such as by being tied, bound, or locked up. I mean, is that enhancement only going to not apply if you fortuitously find the individual in the vault, and that's where you lock them up? I mean, we have to read different locations in the context, knowing that its neighbor is physically restrained, which includes some amount of movement, you would think, in locking somebody up. So how would you read abducted? Don't we have to read abducted in a way that doesn't eliminate physical restraint, the two-level enhancement? Your Honor, the two coexist because there is a three-part test that the government has proposed in its briefing and that the Tenth Circuit adopted in the Arch Uletta case regarding what is required to establish physical restraint. And that's first that there be forced movement of a victim, second that the victim be forced to actually accompany the offender to a different location, and then third that that be to either facilitate the crime or the escape. So that creates the clear line that Mr. Hill points to, or the defense points to. There not being a clear line here, but that three-part test creates a very clear standard as to when the abduction enhancement applies and when it doesn't if the other factors that would underlay the physical restraint enhancement applies. So won't a physical restraint under your view, like won't an abduction almost always happen when there's a physical restraint? An abduction may often be accompanied with a physical restraint, but the guidelines tell us what to do when that occurs, and that is to apply the guideline that has the higher impact on the ultimate offense level, So the only time the physical restraint would apply is if you tie them up and they're standing in a precise location. If they actually take a step in one direction or the other direction, then it's an abduction. No, Your Honor, because of the additional requirement that the victim and the offender accompany each other. In the Osborne case, the Fourth Circuit pointed out that this would often be the distinction, and I would also point the court to its prior decision in the Coleman case. There, there are facts in which the court applied the physical restraint enhancement and applying the approach that the government recommends here and that the Tenth Circuit used in the Archuleta case would actually still dictate that the physical restraint enhancement was the proper enhancement there and not the abduction enhancement. And that is because on the facts of the Coleman case, the robber was in the main lobby of the building. The victim was in an adjoining office room. The robber stayed there and told the victim, come in here where the other victims are at. That's a physical restraint because the victim was not accompanied by the offender at that point. So this creates a very clear distinction, and it again harmonizes with the cases that the Sixth Circuit has decided regarding these two guidelines. In the Cabo case and in the Greenup case, this court affirmed application of the abduction enhancement when there was movement within a single building. In the Cabo case, it was movement of a sexual assault victim in an Indian country case from upstairs to a downstairs bedroom. And in the Greenup case, it was a bank manager who was awoken in their room and then moved into, at least it appears, the adjoining room. The court found that that was enough there. And as I just pointed out, the Coleman case is correctly decided on the government's approach, as is the other case that the defense points to, which is the United States v. Smith-Hodges. And the reason why the abduction enhancement couldn't be applied there is because that's a felon in possession case. The controlling guideline in the Smith-Hodges case was 2K2.1, and the district court applied, and this court affirmed the physical restraint enhancement as found in the general victim-related adjustments in Section 3 of the guidelines. Section 3 does not include an additional enhancement for abduction, so that wasn't even an option to the district court or to the court here. So affirming and adopting this three-part test that the Tenth Circuit has enunciated in Arctuleta that comports with the plain language of the guideline and that comports with the policy rationales behind the guideline. Can I ask, so the third factor of the test you would propose, is it facilitated the crime? That comes from actually the text of the guideline specific to the robbery enhancement and not the definition of the abduction. So the robbery in 2K2, sorry, not in 2K2.1, in 2B3.1b4a, the language is, if any person was abducted, to facilitate commission of the offense or to facilitate escape increased by four levels. So that last part of the three-part test comes from the latter portion of the language of 2B3.1b4a. And that really harkens back to the twin policy rationales underlying the abduction guideline. This court did discuss that in the Cabo case. And in the Cabo case, this court said the rationales here are to protect victims from the additional harm that may result during their forced accompanied movement in these kinds of situations. And second, to punish more harshly people that take these kinds of actions in furtherance of either their crime or their escape. And I would submit, I know we have talked about hypotheticals even within one room, but often if a victim is moved during a robbery, it's at gun or knife point. And so the guidelines take that into account. They recognize that. And the plain language punishes that conduct more severely than a mere physical restraint. Because the reality is that when a victim is forced to accompany an offender that has a gun or a knife pointed at them, there are endless possibilities that could increase the risk to that victim and endless concerns that the guidelines correctly capture. So if you change the hypothetical even in this case, and they didn't go from the storeroom to the break room, if they just went across the storeroom, you would say that it still should have applied? It would depend on the other factors. Here it was clear that both the first and the third factors were met, that there was forced movement and that it was to facilitate the crime or the escape. So it would depend on why they were moved within the room. Obviously if the tellers were instead in it, sorry, not the tellers, if the victims and the customer were in a large room and moved to the back of it so that they could obscure the vision of those people, the abduction enhancement would again capture that conduct. Also because of the twin policy rationales. So when we're thinking about what different location means, should we just think of what the ordinary meaning of abduction is as well? Sometimes you use, I can think of examples where the Supreme Court, when a term is defined, they still think of what the term is in the abstract in order to help clear up ambiguity in the definition. And I think it would be quite unusual to call that an abduction under the ordinary meaning of the word abduction, to just a movement across a room. Thank you, Your Honor. The first thing that I would point out is that Stinson dictates that the language used in the guideline and the commentary that directly interprets it is controlling. But the second thing I would point the Court to is the Eleventh Circuit's decision in Watley. There the Court did provide two different definitions for abduction, but it stopped at then using generalities to consider what might constitute abduction. When those definitions are drilled down into, forced accompanied movement within a single building would still constitute an abduction. I'm happy to go through those. The Watley Court cited the Oxford English Dictionary definition as defining abducted to mean led or carried away improperly or kidnapped, and Black's Law is defining it as the act of leading someone away by force or fraudulent persuasion. Common among those two is that someone is led away, led away from some position. And while Black's Law does not define away, at least that I could find, the Oxford English Dictionary does, and it defines it as expressing motion or direction from a place to a distance to some other place so as to be absent, and as the government's brief points out, the Oxford English Dictionary further defines place to mean room, available space, or a space that can be occupied. So even if the definitions of abducted that were used by the Watley Court are drilled down into, the conduct underlying Mr. Hill's case would still constitute an abduction. I know that there is some knee-jerk intuitive appeal that someone has to be taken across. I know that I would call it knee-jerk. What I would call it is you read words in context, and the context of a different location, for instance, when it comes to a robbery, is it's a different location than the place you just robbed. I would think there's a pretty good argument that that's the context of different location within the meaning of a robbery. You see what I'm saying? When you think of, you can say different location. If you say different location within a building, then it's perfectly clear that, or a different location within this room, then it's perfectly clear that two spots in the room could qualify as a different location. But the problem that I see with the guideline is that it doesn't have the modifier of within a room or within a building or within the state of Ohio. And so the question is how do we, as Watley said, how do we pick the correct level of generality? And it's not intuitive to me to think that the correct level of generality should be a different place within the bank that you just robbed or here at the phone store that you just robbed. If two employees at the store were saying, what are you doing for lunch? Oh, I'm going to a different location. I think they'd be surprised to see them in the break room, right? I mean, that would mean they'd go outside for lunch. So, I mean, don't we have to read this in kind of the context of how it's used here with respect to a robbery statute? Your Honor, we do. I believe that, and I understand the concern that was animating both the Seventh Circuit and the Eleventh Circuit in saying that the level of generality is what they're concerned with here. I think when we have the guideline and the text interpreting the guideline not providing a level of generality, we again have to return to the plain meaning and the policy rationale underlying the guideline. And I acknowledge that there are many levels of generality that location could be applied to, but the Oxford English Dictionary and the definitions before this Court give us the most ordinary use of that term location, and they indicate that it would include movement, as Your Honor indicated, within a singular room. I think when there is a term that is left undefined in the guidelines and we have to figure out what it means, this Court has told us that the first place that we should turn is to the plain meaning of that term, and that's coming to us here from the Oxford English Dictionary. As I understand it, the standard you would have us adopt, which is really the Tenth Circuit, asks in part if a victim was forced to move from his or her original position with sufficient force. So it could actually be somebody sitting in that chair, I suppose, under your argument, who's forced to move six inches. And that would still be an abduction if the other two parts of the three-part test are met. Yes, Your Honor, that is correct. My position is that, and the government's position, is that the plain language of the guideline and its commentary simply compels that conclusion. But again, it compels that conclusion because of the twin policy rationales underlying the guideline and the fact that there is an increased risk of danger or of harm to that person that is forcibly moved. So, don't we have to, it's an ordinary language, you read the two provisions together. That just struck me as a physical restraint, right? You just, you're moving them a little bit to restrain them. And the vast majority of cases, when you physically restrain somebody, you're going to move them enough. The physical restraint is to facilitate a getaway, so that factor is met. I don't know why physical restraint just wouldn't be totally swallowed up by abduction, under your view. As I pointed to, the Coleman case indicates a situation where it would be a physical restraint but not an abduction. Additionally, Your Honors, it's going to be a physical restraint if there's not movement. So, simply forcing someone to the ground or telling everyone to stay in place, in the context of a bank robbery, with a gun, is going to still constitute a physical restraint. Taking those people and herding them to some different location will be an abduction. The plain language of the guideline catches that. And the increased risk of harm to those people is the justification or the policy rationale behind that. I see as one problem, you know, the movement can be minuscule. I mean, the movement could be inches, right? And then that will take you from physical restraint to abduction. On the plain language of the guideline, Your Honors. As you read the plain language. That's correct. It could be an inch or two inches. If the court is concerned with that, it could obviously cabin that language somewhat. Here, there was movement from room to room. There's no question about that. The defense has never contested that. And it was a movement from a large, window-facing room that faced the street to a secluded back room where the tellers were bound and zip-tied. And again, to highlight the distinction between the abduction and the physical restraint, the abduction You'll have to facilitate the commission of the crime. That's the second part of it. It has to be in furtherance of that, yes, Your Honor. But here, the distinction would be the abduction is moving the people to the back room. The physical restraint would be tying and binding them on the floor. Had they been told to stay in their original positions and been bound with zip-ties there, that would not be an abduction. They would not have accompanied the offenders to a different location. Time has run out. Thank you very much, Your Honor. Thank you. Thank you, Your Honors. A couple points I'd like to make in my rebuttal. First is I think it's important to look at this specific offense characteristic in the context of the entire guideline. So not only are we talking about this specific offense characteristic for restraint and abduction, but there are also other specific offense characteristics for firearms. There's a number of them depending on how the firearm is used. And then also for actual harm to victims. So we're looking at a very narrow issue here. And I disagree with the government that if the Tenth Circuit's test were applied here, that it would comport with Coleman. I think you would have to overrule Coleman because in that instance, someone is moved. They're moved forcibly from their office. They're moved forcibly to the lobby where the bank robber is. So you have, at least in my view, you have an accompaniment there because they've come to the position where the robbery is, and that's in facilitation of the robbery. So I think you're going to, if you adopt that standard, it will conflict with that case. There's also – No matter what standard we're going to adopt, there's going to be a circuit conflict, right? Correct. Correct. And that was – the Coleman case is a Sixth Circuit case. So that was my concern there. As well as there's U.S. v. Faulkner, which is another Sixth Circuit case. I didn't cite it in my brief, but it's 188 F. 3rd 509, where some employees were ordered in the back room of a credit union. Another security guard was grabbed by his collar and moved. And again, physical restraint was applied there. Are you aware of any case that has adopted the government's – where the facts were like the facts and are hypotheticals, where it was just a movement between seats and they called that an abduction? That would be a pretty – are you aware of any cases that fit that type of hypothetical? So the closest I would be aware of would not specifically deal with this guideline, but would deal with a similar definition in a different statute that I don't think applies here. But also I think you can look at some other circuits. The Second Circuit and the Seventh Circuit have held physical restraint where there's a gun pointed at someone and they haven't ordered that person to move. That was just recently in the Seventh Circuit in U.S. v. Herman. That's 930 F. 3rd 372. So I think there the implication is they expect some movement when there's physical restraint. And overall, my concern here is that if the government's position is adopted, it's the position that I guess I've heard the government question on, but is that the physical restraint specific offense characteristic will be read out of the guidelines because all cases or essentially all cases that involve physical restraint will be now classified as abduction and get the higher offense level. Okay. Thank you. Thank you, counsel, both of you, for your arguments this morning. We really do appreciate them. Obviously, circuits have had a variety of approaches to the issue before us, and we'll do our best to decide it appropriately. The case will be submitted, and you may call the hearing.